**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEREK GUBALA, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| SIMPLY NOURISH PET FOOD COMPANY, LLC, an Arizona limited liability company, | ) ) ) | |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Derek Gubala ("Plaintiff" or "Gubala"), individually and on behalf of all others similarly situated, by and through his counsel, brings this Class Action Complaint against Defendant Simply Nourish Pet Food Company, LLC ("Defendant" or "Simply Nourish"). Plaintiff, on behalf of himself and all others similarly situated, complains and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## I.  NATURE OF THE ACTION

1.      This is a consumer protection class action based on the false advertising of Simply Nourish's Hip & Joint product (the "Product"). Defendant claims the Product provides significant health benefits for the hips and joints of dogs who drink the Product. These claimed health benefits are the only reason a consumer would purchase the Product. Simply Nourish's advertising claims, however, are false, misleading, and reasonably likely to deceive the public.

2.      Through a widespread nationwide marketing campaign, Simply Nourish promises that the Product will support and help maintain hip and joint function and flexibility. Simply Nourish asserts that the ingredient glucosamine will provide these significant health benefits.

3.      For example, the Product's packaging prominently advertises "Hip & Joint Joint Support" and "Supports & Helps Maintain Hip & Joint Function & Flexibility." Simply Nourish communicated the same substantive message on all of the Product's packaging and labeling: the Product will improve the health of joints of consumer's pets. The joint health benefit message on the packaging of the Product will be collectively referred to as Defendant's "joint health benefit representations."

4.      Simply Nourish's advertising and marketing campaign is designed to induce consumers to purchase the Product because of their reliance upon the accuracy of the deceptive health benefits message. As a result of the misleading messages conveyed by its marketing campaign, Simply Nourish has caused consumers to purchase an item that does not perform as advertised.

5.      Plaintiff brings this action on behalf of himself and other similarly situated consumers who have purchased the Product to halt the dissemination of these false, misleading and deceptive advertising messages, correct the false and misleading perception Simply Nourish has created in the minds of consumers, and obtain redress for those who have purchased The Product. Plaintiff alleges that Simply Nourish's conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act and Consumer Fraud Laws similar to that of Illinois under the facts particular to this case.

## II.  JURISDICTION AND VENUE

6.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and the members of the Class are citizens of States different from Simply Nourish.

7.     This Court has personal jurisdiction over Simply Nourish because Simply Nourish conducts business in Illinois. Simply Nourish has marketed, promoted, distributed, and sold the Product in Illinois, and Simply Nourish has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

8.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he resided in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because Simply Nourish transacts substantial business in this District.

## III.  PARTIES

*Plaintiff*

9.     Plaintiff Derek Gubala is a citizen of the State of Illinois. At all relevant times, he was domiciled in Will County, Illinois. In early January, 2014, Plaintiff saw Simply Nourish's representations by reading the Product's label at a PetSmart in Bolingbrook, Illinois. In reliance on the joint health benefit representations on the label, Plaintiff purchased the Product for approximately $12.00. By purchasing the falsely advertised Product, Plaintiff suffered injury-in-fact and lost money.

10.     The Product does not provide the promised benefits. Had Plaintiff known the truth about Simply Nourish's misrepresentations and omissions at the time of his purchase, Plaintiff would not have purchased the Product.

***Defendant***

11.     Defendant Simply Nourish Pet Food Company, LLC is an Arizona limited liability company. Its corporate headquarters and principal place of business are located at 19601 North 27th Ave., Phoenix AZ 85027. As such, Simply Nourish is a citizen of Arizona. Simply Nourish manufactures, distributes, markets, and/or sells the Product to tens of thousands of consumers in Illinois and throughout the United States.

## IV.  FACTUAL ALLEGATIONS

***The Hip & Joint Product***

12.     Simply Nourish sells the Hip & Joint: Joint Support through a variety of third-party retailers on a nationwide basis.

13.     The Product is available in 16 oz. bottles retailing for approximately $11.24. The following are pictures of the front label of a representative bottle of the Product:



14.     Since the Product's launch, Simply Nourish has consistently conveyed the message to consumers throughout the United States, including Illinois, that the Product "supports & helps maintain hip & joint function & flexibility." The product is also labeled "Hip & Joint Joint Support," and is the "Level 3: Maximum" product, indicating that it will do the most for the joints of a consumer's pets. Simply Nourish has consistently conveyed the message to consumers throughout the United States that the Product helps improves joints simply by consumption. Simply Nourish claims that glucosamine is the primary active ingredient, and that chondroitin is an active ingredient.

15.     As more fully set forth below, the scientific evidence indicates no joint health benefits resulting from the consumption of glucosamine, whether taken alone or in combination. Simply Nourish's joint health benefit representations are false, misleading and deceptive.

16.     In addition to the primary active ingredient, the Product contains lesser amounts of other ingredients, including: chondroitin sulfate, Vitamin C, methylsulfonylmethane, zinc, Vitamin E, Manganese, Copper, and Hyaluronic Acid. As more fully discussed below, none of these ingredients are effective in providing the joint health benefits represented by Simply Nourish.

17.     Even though numerous clinical studies have found that glucosamine—alone or in combination—is ineffective, Simply Nourish continues to make representations on its packaging and labeling for the Product which repeat and reinforce the fraudulent health claims. The Product's label also contains such misleading terms as "Supports & Helps Maintain Hip & Joint Function & Flexibility" and "Joint Support."

***Scientific Studies Confirm That the Product is Not Effective And Defendant's Health Benefits
Message is False and Deceptive***

18.     Contrary to Simply Nourish's representations, however, independent studies

published at least as early as 2004 have found that glucosamine, alone or in combination with

other ingredients including chondroitin, is ***not*** effective in providing the represented joint health

benefits. On information and belief, while most studies were conducted on humans, these studies

also prove the ineffectiveness of glucosamine, alone or in combination, in pets as well.

19.     For example, a 2004 study by McAlindon *et al.*, entitled *Effectiveness of*

*Glucosamine For Symptoms of Knee Osteoarthritis: Results From an Internet-Based*

*Randomized Double-Blind Controlled Trial*, 117(9) Am. J. Med. 649-9 (Nov. 2004), concluded

that glucosamine was no more effective than a placebo in treating the symptoms of knee

osteoarthritis – in short, that glucosamine is ineffective.

20.     Also as early as 2004, many studies confirmed there is a significant "placebo"

effect with respect to consumption of products represented to be effective in providing joint

health benefits such as The Product—more than 30% of persons who took placebos in these

studies believed that they were experiencing joint health benefits when all they were taking was

a placebo. A 2004 study by Cibere *et al*., entitled *Randomized, Double-Blind, Placebo-*

*Controlled Glucosamine Discontinuation Trial In Knee Osteoarthritis*,51(5) Arthritis Care &

Research 738-45 (Oct. 15, 2004), studied users of glucosamine who had claimed to have

experienced at least moderate improvement after starting glucosamine. These patients were

divided into two groups – one that continued using glucosamine and one that was given a

placebo. For six months, the primary outcome observed was the proportion of disease flares in

the glucosamine and placebo groups. A secondary outcome was the time to disease flare. The

study results reflected that there were no differences in either the primary or secondary outcomes

for glucosamine and placebo. The authors concluded that the study provided no evidence of symptomatic benefit from continued use of glucosamine – in other words, any prior perceived benefits were due to the placebo effect and not glucosamine.

21.     As a study sponsored by the National Institute of Health ("NIH") concluded: "The analysis of the primary outcome measure did not show that either [glucosamine or chondroitin], alone or in combination, was efficacious. . . ." Clegg, D., *et al.*, Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis, 354 New England J. of Med. 795, 806 (2006) ("2006 GAIT Study"). The study authors rigorously evaluated the effectiveness of glucosamine hydrochloride and chondroitin, alone and in combination, on osteoarthritis for six months. According to the study's authors, "The analysis of the primary outcome measure did not show that either supplement, alone or in combination, was efficacious. . ." 2006 GAIT Study at 806.[1] Subsequent GAIT studies in 2008 and 2010 reported that glucosamine and chondroitin did not rebuild cartilage[2] and were otherwise ineffective – even in patients with moderate to severe knee pain for which the 2006 reported results were inconclusive. *See* Sawitzke, A.D., *et al.*, The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis: A GAIT Report, 58(10) J. Arthritis Rheum. 3183–91 (Oct. 2008); Sawitzke, A.D., Clinical Efficacy And Safety Of Glucosamine, Chondroitin Sulphate, Their Combination, Celecoxib Or Placebo Taken To Treat Osteoarthritis Of The Knee: 2-Year Results From GAIT, 69(8) Ann Rhem. Dis. 1459-64 (Aug. 2010).

---

[1]   The 2006 GAIT Study was funded by the National Center for Complementary & Alternative Medicine and the National Institute of Arthritis and Musculoskeletal and Skin Diseases, two components of NIH.
[2]   To similar effect, a study by Kwok, et al., entitled *The Joints On Glucosamine (JOG) Study: A Randomized, Double-Blind, Placebo-Controlled Trial To Assess The Structural Benefit Of Glucosamine In Knee Osteoarthritic Based On 3T MRI*, 60 Arthritis Rheum 725 (2009) concluded that glucosamine was not effective in preventing the worsening of cartilage damage.

22.     The GAIT studies are consistent with the reported results of prior and subsequent studies.  For example, the National Collaborating Centre for Chronic Conditions ("NCCCC") reported "the evidence to support the efficacy of glucosamine hydrochloride as a symptom modifier is poor" and the "evidence for efficacy of chondroitin was less convincing." NCCCC, *Osteoarthritis National Clinical Guideline for Care and Management of Adults*, Royal College of Physicians, London 2008. Consistent with its lack of efficacy findings, the NCCCC Guideline did not recommend the use of glucosamine or chondroitin for treating osteoarthritis.  *Id.* at 33.

23.     A study by Rozendaal *et al.*, entitled *Effect of Glucosamine Sulfate on Hip Osteoarthritis*, 148 Ann. of Intern. Med. 268-77 (2008), assessing the effectiveness of glucosamine on the symptoms and structural progression of hip osteoarthritis during 2 years of treatment, concluded that glucosamine was no better than placebo in reducing symptoms and progression of hip osteoarthritis.

24.     A 2010 meta-analysis by Wandel, *et al.*, entitled *Effects of Glucosamine, Chondroitin, Or Placebo In Patients With Osteoarthritis Or Hip Or Knee:  Network Meta-Analysis*, BMJ 341:c4675 (2010), examined prior studies involving glucosamine and chondroitin, alone or in combination, and whether they relieved the symptoms or progression of arthritis of the knee or hip. The study authors reported that glucosamine and chondroitin, alone or in combination, did not reduce joint pain or have an impact on the narrowing of joint space: "Our findings indicate that glucosamine, chondroitin, and their combination do not result in a relevant reduction of joint pain nor affect joint space narrowing compared with placebo." *Id.* at 8. The authors further concluded "We believe it unlikely that future trials will show a clinically relevant benefit of any of the evaluated preparations." *Id.*

25. On July 7, 2010, Wilkens *et al.*, reported that there was no difference between placebo and glucosamine for the treatment of low back pain and lumbar osteoarthritis and that neither glucosamine nor placebo were effective in reducing pain related disability. The researchers also concluded that, "Based on our results, it seems unwise to recommend glucosamine to all patients" with low back pain and lumbar osteoarthritis. Wilkens *et al.*, *Effect of Glucosamine on Pain-Related Disability in Patients With Chronic Low Back Pain and Degenerative Lumbar Osteoarthritis*, 304(1) JAMA 45-52 (July 7, 2010).

26. In 2011, Miller and Clegg, after surveying the clinical study history of glucosamine and chondroitin, reported that, "The cost-effectiveness of these dietary supplements alone or in combination in the treatment of OA has not been demonstrated in North America." Miller, K. and Clegg, D., *Glucosamine and Chondroitin Sulfate*, Rheum. Dis. Clin. N. Am. 37 103-118 (2011). Studies that fail to demonstrate results are evidence that the studied material does not provide those results.

27. As the evidence indicates, glucosamine is ineffective at improving the join health in any animal, including dogs.

***The Impact of Defendant's Wrongful Conduct***

28. Despite clinical studies that show the ingredients of the Product are ineffective, Simply Nourish conveyed and continues to convey one uniform health message: the Product promotes joint function and flexibility.

29. As the distributor of the Product, Simply Nourish possesses specialized knowledge regarding the content and effects of the ingredients contained in the Product and is in a superior position to know whether the Product works as advertised.

30.     Specifically, Simply Nourish knew, but failed to disclose, that the Product does not provide the joint health benefits represented and that well-conducted, clinical studies have found ingredients in the Product to be ineffective in providing the benefits represented by Simply Nourish. Plaintiff and Class members have been and will continue to be deceived or misled by Simply Nourish's false and deceptive representations. Plaintiff purchased the Product during the Class period and in doing so, read and considered the Product's label and based his decision to purchase the Product on the joint health benefit representations on the Product packaging. Simply Nourish's joint health benefit representations and omissions were a material factor in influencing Plaintiff's decision to purchase the Product.

31.     The only purpose for purchasing the Product is to obtain the represented joint health benefits for the customer's pet. There are no other reasons for Plaintiff and the Class to have purchased the Product.

32.     Plaintiff and the Class would not have purchased the Product had they known Simply Nourish's joint health benefit statements were false and misleading and that clinical cause and effect studies have found the ingredients to be ineffective for the represented joint health benefits.

33.     As a result, Plaintiff and the Class members have been injured in fact in their purchases of the Product in that they were deceived into purchasing a product that does not perform as advertised.

34.     Simply Nourish, by contrast, reaped enormous profit from its false marketing and sale of the Product.

## V. CLASS ALLEGATIONS

35.     Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Simply Nourish for violations of Illinois state laws and similar laws in other states:

### Multi-State Class Action

> All persons who, within the applicable statute of limitations under their respective state's consumer fraud act,[3] purchased the Simply Nourish Hip & Joint product.

Excluded from the Class are Simply Nourish, its parents, subsidiaries, members, affiliates, officers and directors, and those who purchased the Product for the purpose of resale.

36.     In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated Illinois residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

### Illinois Class Action

> All Illinois residents who, within the applicable statute of limitations, purchased the Simply Nourish Hip & Joint product.

---

[3] While discovery may alter the following, Plaintiff preliminarily avers that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); California (Cal. Bus. & Prof. Code §17200, *et seq.* and Cal. Civil Code § 1750, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6-101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

Excluded from the Class are Simply Nourish, its parents, subsidiaries, members, affiliates, officers and directors, and those who purchased the Product for the purpose of resale.

37.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

38.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. On information and belief, there are thousands of consumers who have been damaged by Simply Nourish's wrongful conduct as alleged herein. The precise number of Class members and their addresses are presently unknown to Plaintiff, but may be ascertained from Simply Nourish's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

39.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    (a)     Whether the representations discussed herein that Defendant made about the Product were or are misleading, or likely to deceive;

    (b)     Whether Plaintiff and the Class members were deceived by Defendant's representations;

    (c)     Whether Defendant's conduct constitutes violations of the laws asserted herein;

    (d)     Whether Plaintiff and Class members have been injured and the proper measure of their losses as a result of those injuries;

    (e)     Whether Plaintiff and Class members are entitled to an award of

compensatory/actual damages; and

(f)     Whether the Plaintiff and Class members are entitled to injunctive or declaratory relief.

40.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform misconduct described above and were subject to Defendant's deceptive and misleading conduct.

41.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by the Plaintiff and his counsel.

42.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class members as a whole.

43.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford

individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CLAIMS ALLEGED

### COUNT I
### Violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2

44.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

45.     In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 505/2, *et seq.* ("the Act"), like the consumer fraud acts of numerous other states across the nation, prohibits deceptive acts and practices in trade or commerce, including the sale of the Product by Defendant.

46.     Plaintiff and the Class were injured by Defendant's deceptive misrepresentations, concealments and omissions. These misrepresentations, concealments and omissions were material, and deceived Plaintiff and the Class.

47.     Defendant does business in Illinois, sells and distributes the Product in Illinois, and engages in deceptive acts and practices in connection with the sale of the Product in Illinois and elsewhere in the United States.

48.     Defendant created and caused the joint health benefit claims to be published to consumers in connection with the sale of the Product.

49.     The Product that Plaintiff and the Class purchased is a "consumer item" as that term is defined under the Act.

50.     Defendant misrepresents and deceptively conceals, suppresses and/or omits material information known to Defendant as set forth above concerning the Product which has caused damage and injury to Plaintiff and the Class.

51.     Defendant's deceptive acts are occurring in a course of conduct involving trade and commerce in Illinois and throughout the United States.

52.     Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff and the Class.

53.     Defendant intended Plaintiff and all Class members to rely on its deceptive acts.

54.     Defendant's conduct constituted a consumer fraud under the Illinois Consumer Fraud Act and similar laws in other states.

## VII.  **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII.  **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Derek Gubala, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter an Order awarding the following relief:

(a)     Certifying this action as a class action—either as a multi-state class or, in the alternative, as an Illinois class;

(b)     Awarding compensatory and actual damages, including restitution and disgorgement of Defendant's revenues to Plaintiff and the other Class members generated from the unlawful practices set forth herein;

(c)     Enjoining Defendant from continuing the unlawful practices set forth herein;

(d)     Awarding statutory damages to Plaintiff and the other Class members, as provided by the applicable Consumer Fraud Acts;

(e)     Awarding attorneys' fees and costs to Plaintiff and the other members of the Class; and

(f)     Such other and further relief as the Court deems just and proper.


Dated: March 3, 2014                           Respectfully submitted,

                                               DEREK GUBALA, individually and on
                                               behalf of all others similarly situated


                                               By _____
                                                    One of the Attorneys for Plaintiff
                                                    And the Proposed Putative Class

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
gbarbakoff@siprut.com
Gregory W. Jones
*gjones@siprut.com*
**SIPRUT** PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.267.1906

4827-6590-5944, v. 1